IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Gary Fredrich, | C/A No. 3:13-cv-01072-JFA |
| Plaintiff, | |
| vs. | **ORDER** |
| Dolgencorp, LLC, | |
| Defendant. | |

## I.   INTRODUCTION

This matter comes before the court on a Motion for Summary Judgment by Defendant Dolgencorp, LLC.  Plaintiff Gary Fredrich, a former store manager at Dollar General, was terminated on November 8, 2012, for purported violations of Defendant's policies related to cash handling.  Plaintiff claims his termination was in retaliation for filing a workers' compensation claim and that he was defamed based on his termination and alleged statements by Defendant's employees suggesting he stole money from the store and that he is prejudice.

Accordingly, Plaintiff's Amended Complaint alleges two causes of action: 1) workers' compensation retaliation pursuant to S.C. Code Ann. § 41-1-80 and 2) defamation (slander).  Discovery has closed and this case is now ripe for the court's consideration of dispositive motions.  Defendant filed a motion for summary judgment on June 13, 2014.  For the reasons discussed below, this Court grants Defendant's motion for summary judgment in part and denies Defendant's motion for summary judgment in part.

## II.   BACKGROUND FACTS

Plaintiff's employment with Defendant began in November 2008 (Fredrich Dep. 25:9–15). Plaintiff's career with Defendant progressed and he ultimately became the store manager of Defendant's store 12106 in Sumter, South Carolina around May 2010. (Fredrich Dep. 34:1–15). While the store manager, Plaintiff attempted to terminate a part-time sales associate, Renard Belser ("Belser"), for working slower than required by company policy while unloading the rolltainers from the inventory truck. (Fredrich Dep. 49:6–50:6; 52:11–17). However, Ben Bellamy ("Bellamy"), the District Manager of Defendant, required Plaintiff to reinstate Belser as a sale associate because Plaintiff failed to document properly the reasons for Belser's termination. (Bellamy Dep. 66:5–12). After Belser's reinstatement, the relationship between Belser and Plaintiff grew contentious and eventually escalated to a confrontation between the two employees. (Fredrich Dep. 71:16–72:5). After his reinstatement, Belser believed that Plaintiff directed more effort to terminate him. (Fredrich Dep. 63:21–64:23). Belser expressed such beliefs with other employees in allegedly defamatory remarks about Plaintiff. *See id.* More details about Belser's statements are discussed below within the defamation claim.

On October 24, 2012, Plaintiff states that he hurt his back when setting up a display rack. (Fredrich Dep. 170:22–24). Around that same time, Plaintiff reported the injury. *Id.* Sometime before October 24, 2012, Bellamy noticed cash inconsistencies at the Sumter store and began an investigation. (Bellamy Dep. 28:13–29:10). The exact date Bellamy launched the investigation is not clear; however, it is clear from the evidence that it was before October 24, 2012. Eventually, Bellamy's investigation yielded information that warranted an on-site visit by loss prevention. (Bellamy Dep. 32:24–33:4). Bellamy contacted Bradley Newkirk ("Newkirk"), the Regional Loss Prevention Manager, and Newkirk agreed to conduct an on-site investigation on

2

November 8, 2012.  (Bellamy Dep. 34:12–17).  Both Bellamy and Newkirk visited the Sumter

store on November 8, 2012, coincidentally, the same day that John West, the Regional Director,

visited the Sumter store.  (Fredrich Dep. 88:3–12; 14–26).  After about an hour investigating

paperwork, Newkirk conducted an interview with Plaintiff.  (Fredrich Dep. 89:6–25).  Newkirk

testified that during this interview, Plaintiff admitted to certain violations of the Defendant's

corporate policy.  (Newkirk Dep. 21–22).  At the end of the interview, Plaintiff provided a hand-

written statement admitting to certain violations of the Defendant's corporate policy.  (Fredrich

Dep. Exh. 1; Bellamy Dep. Exh. 2).  Newkirk then stepped outside of the interview room to

discuss the findings with Bellamy.  (Bellamy Dep. 65:4–8).  Bellamy contacted human resources

regarding Plaintiff's possible termination.  (Bellamy Dep. 64–65).  After his discussion with

human resources and Newkirk, Bellamy immediately terminated Plaintiff.  (Bellamy Dep. 64:7–

24).  Plaintiff exited the store without an escort and without speaking to any person regarding his

termination.  (Fredrich Dep. 115:23–25).  After Plaintiff's termination, Belser made allegedly

defamatory statements concerning Plaintiff's termination and the reasons for such termination.

Such statements are detailed within the defamation claim discussed below.

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The facts

and inferences to be drawn from the evidence must be viewed in the light most favorable to the

non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). A fact is deemed

"material" if proof of its existence or non-existence would affect disposition of the case under

3

applicable law. *Anderson*, 477 U.S. 242 at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). While all facts and the reasonable inferences therefrom must be construed in the light most favorable to the nonmoving party, that party only creates a genuine issue of fact when it produces evidence that would create a reasonable probability, and not a mere possibility, of a jury finding in that party's favor. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir. 1993).

The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–248).

The party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1)(A-B).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion;

4

(3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order. FED. R. CIV. P. 56(e)(1-4).

## IV.  DISCUSSION

### A.  *Retaliatory Discharge in Violation of S.C. Code Ann. § 41-1-80*

In 1986, the South Carolina General Assembly enacted a statute prohibiting an employer from retaliating against an employee because the employee filed a workers' compensation claim. The statute provides:

> No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law (Title 42 of the 1976 Code), or has testified or is about to testify in any such proceeding.
> . . .
>
> Any employer shall have as an affirmative defense to this section the following: willful or habitual tardiness or absence from work; being disorderly or intoxicated while at work; destruction of any of the employer's property; failure to meet established employer work standards; malingering; embezzlement or larceny of the employer's property; violating specific written company policy for which the action is a stated remedy of the violation.

S.C. CODE ANN. § 41-1-80.  The burden of proving a violation of the retaliatory discharge statute is on the employee. *Id.* The elements of a claim under Section 41-1-80 are: (1) institution of workers' compensation proceedings; (2) discharge or demotion; and (3) a causal connection between elements (1) and (2). *Hines v. United Parcel Serv., Inc.,* 736 F. Supp. 675, 677–78 (D.S.C. 1990).  Defendant concedes that Plaintiff can satisfy the first two elements of a workers' compensation retaliation claim; therefore, this Court will address only the causation element.

5

To satisfy the causation element, the employee must prove that the filing of a workers' compensation claim was the "determinative factor" in his termination. *Hinton v. Designer Ensembles, Inc.*, 343 S.C. 236, 540 S.E.2d 94, 97 (S.C. 2000).  Accordingly, the employee must show that "he would not have been discharged 'but for' the filing of the claim." *Wallace v. Milliken & Co.,* 305 S.C. 118, 121, 406 S.E.2d 358, 360 (S.C. 1991).

If the employer articulates a legitimate, non-retaliatory reason for the termination, the proximity in time between the injury and the termination is not sufficient evidence to carry the employee's burden of proving a causal connection. *See Johnson v. J.P. Stevens & Co., Inc.,* 308 S.C. 116, 417 S.E.2d 527, 529 (S.C. 1992) ("In light of the conceded legitimate, non-retaliatory motives for the termination, [the] proximity in time does not meet the employee's burden of proof."); *Marr v. City of Columbia,* 307 S.C. 545, 548–49,  416 S.E.2d 615, 617 (S.C. 1992) (rejecting retaliatory discharge claim where only evidence suggesting retaliatory motive for discharge was temporal proximity of claim to discharge).

While the employer has the burden of proving its affirmative defenses, the employer does not have the burden of establishing the affirmative defenses are causally related to the discharge. *Horn v. Davis Elec. Constructors, Inc.,* 307 S.C. 559, 564, 416 S.E.2d 634, 636 (S.C. 1992). "The ultimate burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual." *Hinton,* 343 S.C. at 242, 540 S.E.2d at 97. "The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for h[is] exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 242–43, 540 S.E.2d at 97.

Plaintiff asserts that he was discharged because he filed a workers' compensation claim. Defendant maintains that Plaintiff's termination was the result of Plaintiff violating written company policies discovered after an investigation into Plaintiff and the cash handling at his store. (ECF No. 52-1, p. 17). The in-store investigation by the loss prevention manager resulted in Plaintiff providing "oral statements and a hand-written statement admitting several violations of company policy for which employment termination was a stated consequence." *Id.* Certain enumerated violations that were documented in the loss prevention manager's report after the termination were that Plaintiff was terminated for "A) taking money from literacy donations and using them to correct unexplainable cash shortage issues . . . B) keeping a slush fund in the store to correct [unexplainable cash shortage issues] C) borrowing monies from petty cash to correct cash shortages." (ECF No. 52-1, p. 11–12).

*In toto*, the investigation, the verbal admissions made by Plaintiff in the interview, and a hand-written statement where Plaintiff admitted certain violations resulted in an immediate termination of Plaintiff. However, Plaintiff, under oath, later denied certain admissions. (Fredrich Dep. 99, 254, 255–56). Plaintiff denied that he took money from the literacy fund donations and used them to correct cash shortages. *Id.* He denied that he kept a slush fund and defended that he does not understand the term "slush fund."[1] *Id.* He also denied that the store kept a petty cash fund. *Id.*

---

[1] Newkirk states that a "slush fund" is monies in the store office to cover shortages that may occur. Newkirk claims that upon his investigation at the Sumter store there was money found in the office in and around the desk area. Apparently, numerous employees have testified that Plaintiff told them to use some change in a drawer on the desk to cover shortages. (Belser Dep. 44:1–45:16, 46:23-48:8; Lopez-Ortiz Dep. 43:24–44:25; Slater Dep. 60:21–61:21). This would meet Newkirk's definition of a slush fund; however, it appears that Newkirk focused on the $7.00 in the safe and not the drawer with some change in it.

The court acknowledges that there are factual disputes involving whether Plaintiff used monies from the literacy donations to cover cash shortages, whether Plaintiff maintained a slush fund to cover cash inconsistencies, and whether petty cash existed.  Nevertheless, Plaintiff, in his hand-written statement and then again in his deposition admitted that he put "$20.00 of my own money and put in for shortages."  Plaintiff agreed in his deposition that such act was in violation of Defendant's written policy.  (Fredrich Dep. 109:7–10).  This fact is not in dispute and therefore, Plaintiff admitted on the day of his termination, and later during his deposition a violation of at least one written policy.

Defendant terminating Plaintiff for a violation of a written policy is an affirmative defense to any retaliation claim.  As stated in *Horn*, the employer does not have the burden of establishing the affirmative defense is causally related to the discharge, the burden stays with the employee. As such, the employee must persuade the court that the discharge was pretextual.

Other than the fact that the termination occurred in temporal proximity with his work-related injuries, Plaintiff offered unpersuasive evidence the reasons for his termination were pretextual or that, "but for" the filing of workers' compensation claims, he would not have been discharged.  Although the date is uncertain, Plaintiff acknowledged that Bellamy's investigation was "prior to Plaintiff's injury," but argues that it was not a formal investigation. (ECF No. 59, p. 15).  Plaintiff also argues that the loss prevention manager was not involved until "immediately after" Plaintiff's injury to his back. (ECF No. 69, p. 16).  Plaintiff's only direct evidence on the pretextual argument is an email from Bellamy in which Bellamy maintains that Plaintiff's workers' compensation claim is a "stunt" to avoid the existing cash handling investigation. (ECF No. 60-7, p. 1).  Disbelief of the legitimacy of a workers' compensation claim, without

corresponding evidence of intent to retaliate cannot establish the requisite "but for" causation required under S.C Code Ann. § 41-1-80.

Viewing all the evidence in a light most favorable to the Plaintiff, a reasonable trier of fact could not find that the Defendant's reasons for terminating Plaintiff were pretextual when Plaintiff admitted to a violation of the written policy, and the Defendant terminated Plaintiff for a violation of its written policy.  For the foregoing reasons, this Court grants summary judgment on the retaliation claim in favor of the Defendant.

### B. *Defamation*

Plaintiff maintains that Defendant is vicariously liable for defamation arising from statements made by its employees, Belser, Assistant Store Manager Janice Slater ("Slater"), and Newkirk, and for the defamatory inference to the public and other employees on account of Plaintiff's termination.

Under South Carolina law,

> The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. *Swinton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 484, 514 S.E.2d 126, 133 (S.C. 1999). The focus of defamation is not on the hurt to the defamed party's feelings, but on the injury to his reputation. *See Wardlaw v. Peck,* 282 S.C. 199, 205, 318 S.E.2d 270, 274 (S.C. Ct. App. 1984). Defamatory communications take two forms: libel and slander. *Swinton Creek*, 334 S.C. at 484, 514 S.E.2d 126 at 133.  Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. *Id.* at 484, 514 S.E.2d at 134.

*Fleming v. Rose,* 338 S.C. 524, 532, 526 S.E.2d 732,737 (S.C. Ct. App. 2000).  Defamation need not be accomplished in a direct manner. *Eubanks v. Smith,* 292 S.C. 57, 63, 354 S.E.2d 898, 901 (S.C. 1987); *Tyler v. Macks Stores of S. Carolina, Inc.*, 275 S.C. 456, 458, 272 S.E.2d 633, 634

9

(S.C. 1980). "A mere insinuation is actionable as a positive assertion if it is false and malicious and the meaning is plain." *Tyler*, 275 S.C. at 458, 275 S.E.2d at 634.

The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Fleming*, 338 S.C. at 533, 526 S.E.2d at 737; *Holtzscheiter v. Thomson Newspapers, Inc.,* 332 S.C. 502, 518, 506 S.E.2d 497, 506 (S.C. 1998) (Toal, J., concurring in result in separate opinion).

"Moreover, defamation is classified as either actionable *per se* or not actionable *per se*. Slander, which is involved here, 'is actionable *per se* when the defendant's alleged defamatory statements charge the defendant with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession.'" *Fountain v. First Reliance Bank*, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (S.C. 2012) (citing *Goodwin v. Kennedy,* 347 S.C. 30, 36, 552 S.E.2d 319, 322–23 (S.C. Ct. App. 2001)). Whether the statement is actionable *per se* is a matter of law for the court to resolve. *Id.* (citing *Erickson v. Jones Street Publishers, L.L.C.,* 368 S.C. 444, 465, 629 S.E.2d 653, 664 (S.C. 2006)). If the statement is actionable *per se*, then the defendant "is presumed to have acted with common law malice and the plaintiff is presumed to have suffered general damages." *Id.* If the statement is not actionable *per se*, then "the plaintiff must plead and prove both common law malice and special damages." *Id.*

10

The court finds it easiest to first explain the general law on when an employer may be liable for the torts of its employees, and then to analyze each instance of defamatory statements and conduct separately.[2]

*1. Vicarious Liability*

A principal may be held liable for defamatory statements made by an agent acting within the scope of his employment or within the scope of his apparent authority. *Murray v. Holnam, Inc.*, 344 S.C. 129, 139, 542 S.E.2d 743, 748 (S.C. Ct. App. 2001) (citing *Abofreka v. Alston Tobacco Co.,* 288 S.C. 122, 127, 341 S.E.2d 622, 625 (S.C. 1986)); *see also* RESTATEMENT (SECOND) OF AGENCY § 247 (1965)(master is subject to liability for defamatory statements made by servant acting within scope of his employment, or, as to those hearing or reading the statement, within his apparent authority).

To prove that a particular tortious act is within the scope of an employee's employment such that the employer is vicariously liable, a plaintiff must prove that the act was both: as (1) reasonably necessary to accomplish the purpose of the employee's employment; and (2) in furtherance of the master's business. *Park v. Se. Serv. Corp.*, 771 F. Supp. 2d 588, 592–93 (D.S.C. 2011); *see also Armstrong v. Food Lion, Inc.*, 371 S.C. 271, 276, 639 S.E.2d 50, 52 (S.C. 2006) (citing *Lane v. Modern Music, Inc.*, 244 S.C. 299, 305, 136 S.E.2d 713, 716 (S.C. 1964).

The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable. *Lane*, 244

---

[2] From the record, it appears that certain statements regarding Plaintiff's sexual orientation were allegedly made; however, Plaintiff failed to plead any such allegations in his Amended Complaint. The court will not analyze such statements.

S.C. at 305, 136 S.E.2d at 716. Under these circumstances the servant alone is liable for the injuries inflicted. *Id.* If a servant steps aside from the master's business for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended; this is so no matter how short the time, and the master is not liable for his acts during such time. *Id*; *Armstrong*, 371 at 276, 639 S.E.2d at 52–53 (affirming a trial court's decision to direct a verdict for the employer with respect to the plaintiff's assault, battery, and outrage claims after the plaintiff failed to show that these torts were committed for the purpose of, or in some way furthered, the employer's business).

    2.  *Instances of Defamatory Statements and Conduct*

        a.  <u>First Alleged Defamatory Statement</u>

*Plaintiff alleges that Belser told employees and other managers that Plaintiff was stealing money from the store's registers and its in-store safe and that Plaintiff wanted to fire him because of his race. (Am. Compl. ¶¶ 5,6).*

i.  <u>Pre-Termination Statements made by Belser to Other Employees Regarding Stealing</u>

There are allegations that Belser made multiple defamatory statements that accused Plaintiff of stealing before Plaintiff's termination. Sales Associate Brett Willis ("Willis") testified that Belser would say things like "his register would come up short[,] Gary was taking his money." (Willis Dep. 11: 7–9). Lopez-Ortiz testified to the same (Lopez-Ortiz Dep. 15: 16–21). Slater stated that Belser never said anything to her regarding Plaintiff stealing. (Slater Dep. 54:4–16). Belser insists that the actual statements regarding Plaintiff and the cash register and the in-store safe centered on his belief that "Plaintiff was trying to set him up for termination by tampering with his register, to make it appear short on cash, and that he actually witnessed Plaintiff doing so." (Belser Dep. 15:7–9; 19:1–24:9). Belser insists that whatever was actually

12

stated, such statements "were not to suggest Plaintiff was pocketing the money, just that he was moving it around to make Belser's register come up short." (Belser Dep. 22:11–24:6). Plaintiff maintains that such statements accused him of stealing.

Any alleged statement made by Belser accusing Plaintiff of stealing qualifies as actionable *per se* because it accuses Plaintiff of a crime of moral turpitude. *See Davis v. Niederhof*, 246 S.C. 192, 196, 143 S.E.2d 367, 369 (S.C. 1965). A statement that is actionable *per se* may have its defamatory meaning "proven by the language itself or by reference to extrinsic facts." *White v. Wilkerson*, 328 S.C. 179, 185, 493 S.E.2d 345, 348 n.1 (S.C. 1997). Actionable *per se* means the statement is presumed injurious without proof of malice or special damages. *Parrish v. Allison*, 376 S.C. 308, 321, 656 S.E.2d 382, 389 (S.C. Ct. App. 2007).

Accordingly, a factual dispute exists as to what was actually stated—did Belser ever say the word stealing or was it an insinuation, if anything, and whether the statement is actionable *per se* based on the reference to extrinsic facts. Further, no arguments have been made on whether Defendant can be vicariously liable for Belser's pre-termination statements made to other employees regarding stealing. In this same regard, no arguments have been made on whether Belser's comments to other employees regarding stealing were privileged, and if so, whether Belser exceeded such privilege. Both parties present generalized arguments about Belser's statements and whether such statements were within his scope of employment; however, neither party has examined in detail any pre-termination statements made by Belser to other employees regarding stealing.

It is clear from the evidence that Belser has made at least one statement regarding his cash register coming up short or something to that effect. The lack of facts regarding this

13

statement or statements signals to the court that there are still genuine issues of fact that need to be addressed regarding this statement. The court cannot determine what words were used in the actual statement, whether the statement was outside the scope of employment, and if not outside the scope of employment, whether such statements were privileged. Viewing all the evidence in a light most favorable to the Plaintiff and for the foregoing reasons, this Court denies Defendant's motion for summary judgment on the pre-termination statements made by Belser to other employees allegedly concerning his cash register coming up short.

ii.     _Post-termination Statement made by Belser to Lopez-Ortiz_

Lopez-Ortiz testified that on the day that Plaintiff was terminated, Belser came in to work the afternoon shift and made the comment "I told you his ass was stealing." (Lopez-Ortiz Dep. 13, 41–42).

First, it seems that Belser's testimony does not address this alleged statement made by Belser to Lopez-Ortiz. Belser was asked about his conversations with Slater and Lopez-Ortiz regarding Plaintiff's alleged prejudice; however, it appears that Belser was never questioned regarding this specific statement to Lopez-Ortiz. (Lopez-Ortiz Dep. 13:5–11). Once again, no specific arguments have been made on whether Defendant can be vicariously liable for Belser's post-termination statement made to Lopez-Ortiz regarding stealing. In this same regard, no arguments have been made on whether Belser's comments to Lopez-Ortiz regarding stealing were privileged, and if so, whether Belser exceeded such privilege.[3]

---

[3] Both parties present generalized arguments about Belser's statements and whether such statements were within his scope of employment; however, neither party has examined in detail any post-termination statements made by Belser to other employees regarding stealing.

14

It is unclear from the evidence that Belser made such statement to Lopez-Ortiz; the only evidence before the court is Lopez-Ortiz's testimony.    Slater has no recollection of this statement.    The lack of facts regarding this statement signals to the court that there are still genuine issues of fact that still need to be addressed regarding this statement.    The court cannot determine if Belser actually made the statement, whether the statement was outside the scope of employment, and if not outside the scope of employment, whether such statement was privileged.    Viewing all the evidence in a light most favorable to the Plaintiff and for the foregoing reasons, this Court denies Defendant's motion for summary judgment on the alleged post-termination statement made by Belser to Lopez-Ortiz.

iii.    _Statements Regarding Plaintiff's Alleged Prejudice_

1.    _Statement Regarding the Work Schedule_

From the record, it appears that Belser questioned why "all the black people had to work night shift" instead of days.  (Belser Dep. 14:16–25).  Belser made this comment to Lopez-Ortiz and to Slater.   (Belser Dep. 13:5–11, 14:16–20).    However, Slater testified that Belser only questioned why Plaintiff kept scheduling him for all nights, not every black employee.  (Slater Dep. 27: 19–24).

Plaintiff argues that this statement insinuates that he is racist.    Defendant disagrees. When words are capable of both defamatory and non-defamatory meaning, the jury determines which meaning was in fact conveyed.  _Timmons v. News & Press, Inc._, 232 S.C. 639, 644, 103 S.E.2d 277, 280 (S.C. 1958).   However, the court must first determine if such statement was privileged and it is the duty of the trial judge to determine if the statement is privileged.  _Murray v. Holnam_, _Inc._, 344 S.C. 129, 140, 542 S.E.2d 743, 749 (S.C. Ct. App. 2001).    A

15

communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter, which, without this privilege, would be actionable. *Id.* at 140–141, 542 S.E.2d at 749 (citing *Constant v. Spartanburg Steel Prods., Inc.,* 316 S.C. 86, 89, 447 S.E.2d 194, 196 (S.C. 1994)); *Prentiss v. Nationwide Mut. Ins. Co.,* 256 S.C. 141, 147, 181 S.E.2d 325, 327 (S.C. 1971)). Communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business. *Id.* at 141, 542 S.E.2d at 749 (citing *Conwell v. Spur Oil Co.,* 240 S.C. 170, 179, 125 S.E.2d 270, 275 (S.C. 1962)).

The protection of a qualified privilege may be lost by the manner of its exercise. *Fulton v. Atlantic Coast Line R.R.,* 220 S.C. 287, 296, 67 S.E.2d 425, 429 (S.C. 1951). The publisher must not wander beyond the scope of the occasion. *Woodward v. South Carolina Farm Bureau Ins. Co.,* 277 S.C. 29, 32, 282 S.E.2d 599, 601 (S.C. 1981). The privilege does not protect any unnecessary defamation. *Fulton*, 220 S.C. at 297, 67 S.E.2d at 429. In order for a communication to be privileged, the person making it must be careful to go no further than his interests or his duties require. *Id.* Where the speaker exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of the plaintiff, he will not be protected. *Id.* The existence of a duty, a common interest, or a confidential relation is not a defense. *Id.*

From the facts present, a statement made by a sales associate (Belser) to the Lead Sales Associate (Lopez-Ortiz) and to the Assistant Store Manager (Slater) that questions work schedules is privileged. This statement is simply an employee complaining about his work

16

schedule to co-workers that are superior to him.  Belser, Lopez-Ortiz, and Slater all have an interest in the work schedule of the Sumter store.  There is no evidence on the record that Belser exceeded this privilege.  The statement may contain matter, which may be defamatory to Plaintiff; however, it is not actionable because it is privileged.[4]  Based on the foregoing, summary judgment is appropriate as to the allegedly slanderous statement made by Belser to Slater and Lopez-Ortiz concerning the work schedule.

2.    *Statements to Other Employees Accusing Plaintiff of being Prejudice*

Willis testified that Belser once said to him, before Plaintiff was terminated, that "Gary is prejudiced against me."  (Willis Dep. 14:11).  Defendant argues this is a personal opinion and not attributable to Defendant because a personal opinion is outside the scope of employment. Defendant cites to a South Carolina case to support this contention.  *See Courtney v. American Ry. Express Co.*, 120 S.C. 511, 113 S.E. 332, 334 (S.C. 1922).  In *Courtney*, the Supreme Court of South Carolina held that an investigating agent's statement that we "fired him like we would any ordinary thief" uttered in public two weeks after the plaintiff's termination amounted to a personal opinion and could not be within his employer's legitimate business because the investigation and termination had long been closed.  *Id.* at 333–35.  The *Courtney* court reasoned that the investigating agent's comment could serve no legitimate purpose for his employer because the termination had long ago been addressed and closed such that he was no longer carrying out the employer's business when speaking about it.  *Id.*

---

[4] The court understands that Plaintiff is trying to hold Defendant liable for a statement made by an employee; however, it is unnecessary to analyze the scope of employment because the court can resolve this issue under the privilege analysis.

The court slightly disagrees with Defendant's interpretation of the *Courtney* case. The *Courtney* case does not suggest that employee's personal opinions can never be in the scope of the employee's employment, instead it holds that the personal opinion of an employee is not within the employer's legitimate business when the employer's business on the matter is over and done and the employee was not at work.

Plaintiff suggests that there is an insinuation from this statement that he is racist; therefore, such statement is defamation and Defendant should be held vicariously liable. Though, Plaintiff has offered no evidence to support its conclusory statement that Belser stated such comment while at work—Willis did not testify as to where Belser was when the statement was made. Assuming that such statement occurred at work, under the *Courtney* case, the temporal aspects surrounding the statement must be analyzed.

Willis testified that Belser's statement was made before Plaintiff's termination. Additionally, Bellamy and Belser have both testified that Belser at some time complained to the Defendant that Plaintiff attempted to terminate him based on his race. According to Bellamy, he briefly investigated Belser's termination, and questioned Plaintiff on his reasons for terminating Belser. However, neither party outlines *when* Belser made the statement to Willis except for that it was made before Plaintiff's termination.

The lack of facts regarding this statement signals to the court that there are still genuine issues of fact that still need to be addressed regarding this statement. The court cannot determine with certainty where the statement was made, in what context the statement was made, when the statement was made, whether the statement could be privileged, or whether the statement was outside the scope of employment. Based on the foregoing, summary judgment is not appropriate

18

as to the alleged slanderous statement made by Belser to Willis that "Gary is prejudiced against me."

      b.   _Second Alleged Defamatory Statement_

*Slater and Belser told customers that Plaintiff was fired for stealing and being racist. (Am. Compl. ¶ 10).*

As an initial matter, Plaintiff has presented no evidence that Slater made any statements to customers concerning Plaintiff's termination. Therefore, Defendant is entitled to summary judgment regarding any statement that Slater may have made to customers.

*i.*    _Post-termination Phone Call to Brisbon[5]_

Brisbon, a customer of Defendant, testified that Belser called her at home the night of Plaintiff's termination and told her that Plaintiff had been terminated for "stealing and he is prejudiced." (Brisbon Dep., p. 15–16).

Defendant does not argue that this statement is defamatory. Instead, Defendant argues that the statements that Belser supposedly made to Brisbon were not within the course and scope of his employment because they were neither reasonably necessary to accomplish the purpose of his employment or in furtherance of Defendant's business because "[i]t is hard to fathom any supposed business purpose those statements would serve." (ECF No. 52-1, p. 25). To support its argument that the statements were made outside the scope of employment, Defendant points out that there is no evidence that the post-termination comment on the phone to Brisbon was made while Belser was working. Brisbon testified that she had no knowledge of Belser's

---

[5] Belser has denied making any type of statement to Brisbon regarding Plaintiff stealing or being prejudice, whether over the phone or in the store; however, whether such statement was made or not, the court can dispose of this issue based on the scope of employment analysis.

whereabouts when he called her and Plaintiff has offered no evidence that Belser was at work that night.

Plaintiff contends that if defamatory statements were made outside of work hours, such statements were made with the apparent authority of the Defendant and Defendant is vicariously liable for Belser's statements.  The doctrine of apparent authority focuses on the principal's manifestation to a third party that the agent has certain authority.  *Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 296, 468 S.E.2d 292, 297 (S.C. 1996).  The principal is bound by the acts of its agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based on that assumption.  *Fernander v. Thigpen,* 278 S.C. 140, 143, 293 S.E.2d 424, 426 (S.C. 1982); *Eadie v. H.A. Sack Co.,* 322 S.C. 164, 170, 470 S.E.2d 397, 401 (S.C. Ct. App. 1996).  Thus, the concept of apparent authority depends upon manifestations by the principal to a third party and the reasonable belief by the third party that the agent is authorized to bind the principal. *R & G Const., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 432, 540 S.E.2d 113, 117–18 (S.C. Ct. App. 2000) (internal citations omitted).

Plaintiff offered no evidence that Defendant wrote or spoke words, or performed other actions that caused Brisbon to believe that the Defendant consented to Belser's statements surrounding Plaintiff's termination.  In fact, Belser told Brisbon that he could be fired for discussing Plaintiff's termination—this suggests that Belser did not have Defendant's consent to speak of Plaintiff's termination.  (Brisbon Dep. 22–23).

20

However, Plaintiff argues that Defendant ratified Belser's statements by not putting a stop to them because he was allowed to continue to make such comments at work. "Ratification" by a principal of its agent's otherwise unauthorized actions exists upon: (1) acceptance by the principal of the agent's acts; (2) full knowledge of the facts; and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangements. *See, e.g., Lincoln v. Aetna Cas. & Sur. Co.*, 300 S.C. 188, 191, 386 S.E.2d 801, 803 (S.C. Ct. App. 1989).

Plaintiff offers unpersuasive evidence regarding Defendant's ratification of Belser's statements. Plaintiff claims to have called Bellamy once while Plaintiff was still employed, on Bellamy's day off, to tell him about comments Belser was allegedly making about him.[6] (Fredrich Dep. 63:3–10). According to Plaintiff, Bellamy told him he would handle it. *Id.* After that conversation, there is no evidence that Plaintiff ever told Bellamy that Belser's conduct continued. In fact, the evidence shows that the next time Plaintiff complained to Defendant—or Bellamy—about Belser was when Plaintiff formally complained to Defendant's corporate office on November 19, 2012 after Plaintiff was terminated. (Bellamy Dep. Exh. 4). Belser was interviewed and terminated on November 20, 2012, the day after Plaintiff called Defendant's corporate hotline. (Bellamy Dep. Exh. 5, p. 3).

Plaintiff's argument that Defendant is still vicariously liable because it ratified Belser's statements by not stopping him cannot be acceptance by the Defendant because "mere silence or failure of a principal to repudiate the unauthorized act of an agent does not necessarily constitute a ratification, unless the silence or acquiescence in question cannot be explained on any other

---

[6] The facts are silent as to whether Plaintiff complained of Belser making statements to *customers*.

theory than that of ratification." *Stiltner v. USAA Cas. Ins. Co.*, 395 S.C. 183, 191–92, 717 S.E.2d 74, 78 (S.C. Ct. App. 2011) (citing 2A C.J.S. AGENCY § 71 (2003)).  Plaintiff has offered no evidence that Defendant's failure to reprimand Belser from the get go can only be explained by ratification.  As stated above, Belser was eventually investigated the day after Plaintiff made the formal complaint to Defendant's corporate office.

Moreover, Plaintiff's arguments that Defendant is still vicariously liable because it ratified Belser's statements by terminating Plaintiff are unpersuasive.  Plaintiff's termination was not an affirmative election by the Defendant indicating an intention to adopt the statements made by Belser.  Defendant terminated Plaintiff for violation of written policies discovered through its own investigation, its own interview, and the hand-written statement—all of which are separate and apart from the alleged defamatory statements made by Belser.

Based on the foregoing, this Court holds that there is no genuine issue of material fact on whether or not the Defendant is vicariously liable for Belser's statement made during this post-termination phone call to Brisbon.  Therefore, Defendant is entitled to summary judgment in the defamation action regarding this alleged slanderous statement made during the phone call with Brisbon after Plaintiff's termination.

ii.    _Pre-termination Statement Made to Brisbon at the Store_[7]

Brisbon also testified that before Plaintiff's termination of employment, Belser told her while working the cash register that Plaintiff was stealing from the store and that he was a racist. (Brisbon Dep. 35).

---

[7] Belser has denied making any type of statement to Brisbon regarding Plaintiff stealing or being prejudice, whether over the phone or in the store; however, whether such statement was made or not, the court can dispose of this issue based on the scope of employment analysis.

22

Plaintiff argues that defamatory statements made while Belser was on duty were made within the scope of his employment as an associate "interfacing with customers." (ECF No. 59, p. 21). Plaintiff only presents these types of conclusory statements and provides minimal evidence of how Belser's alleged comments were both reasonably necessary to accomplish the purpose of his employment with Defendant and in furtherance of Defendant's business.

Defendant, on the other hand, cites to case law that supports its contention that an employer is not responsible for statements made by employees regarding matters outside their apparent authority even if the statements were made during the workday while the employee was otherwise performing work. *See King v. Charleston Cnty School Dist.*, 664 F. Supp. 2d 571, 586 (D.S.C. 2009) (finding school psychologist's alleged defamatory statement was not attributable to school district when psychologist lacked authority to speak on behalf of school district regarding plaintiff's employment); *Johnson v. Life Ins. Co. of Ga.*, 227 S.C. 351, 366, 88 S.E.2d 260, 268 (S.C. 1955) (finding insurance agent's alleged slanderous comment regarding reasons why insured's claim was denied was outside scope of his employment where there was no evidence agent had authority to speak for the company regarding insured's claim); *Bosdell v. Dixie Stores Co.*, 168 S.C. 520, 167 S.E. 834, 837 (S.C. 1933) (finding employee was not acting within the scope of his authority in making defamatory statement where there was no evidence employee had the authority to make statements regarding plaintiff's employment or termination).

The court finds no merit in the mere suggestion that the alleged slanderous statement made by Belser during his work hours was in furtherance of the business of the corporate Defendant and consequently within the scope of Belser's employment. There is nothing in the record which it may reasonably be inferred that the usual and customary duties of Belser, which

were as a cashier for the Defendant, also entailed authority to speak for the company about personnel matters. Here, the court finds that the only appropriate way to view Belser's act is as a temporary suspension of the master-servant relationship, for which Belser himself is solely liable.

Plaintiff also argues that Belser had the apparent authority to make defamatory statements since he was allowed to continually make the comments while at work. (ECF No. 59, p. 21). As outlined previously, the concept of apparent authority depends upon manifestations by the principal to a third party and the reasonable belief by the third party that the agent is authorized to bind the principal. *See, e.g., Eadie v. H.A. Sack Co.,* 322 S.C. 164, 170, 470 S.E.2d 397, 401 (S.C. Ct. App. 1996).

Plaintiff offered no evidence that Defendant wrote or spoke words, or performed specific actions that caused Brisbon to believe that the Defendant consented to Belser's statements surrounding Plaintiff's termination. The only evidence that Plaintiff may possibly rely on is the fact that Belser was a client-facing cashier. This in itself does not create the requisite apparent authority. Once again, the Defendant did nothing to hold Belser out as having authority to speak regarding personnel issues—he was only a cashier. Based on the foregoing, this Court holds that there is no genuine issue of material fact on whether or not the Defendant is vicariously liable for Belser's statement made while Belser worked the cash register. Therefore, Defendant is entitled to summary judgment in the defamation action regarding the alleged slanderous statement made to Brisbon while Belser worked the cash register at Defendant's store.

      c.   *Third Alleged Defamatory Statement*

*Slater and Belser told non-management employees at other stores that Plaintiff was fired for stealing, incompetency, and for being racist.  (Am. Compl.¶ 10).*

i.    <u>Slater's Statements to Non-Management Employees</u>

Sarah Elstrom ("Elstrom") was previously the Assistant Store Manager at the Sumter store, and worked under Plaintiff.  Before Elstrom transferred to another store, Elstrom trained Slater.  Elstrom would occasionally help the Sumter store when needed.  On one occasion, when Elstrom and Slater worked together at the Sumter store, Slater asked Elstrom if, when she helped managed that store, the money would ever come up short and then be correct a couple of days later.  (Elstrom Dep. 24:18–20).  According to Elstrom, Slater asked this question because the store money had been $50.00 short the night before and because it had previously happened. (Elstrom Dep. 24:23–25:1).

Elstrom testified that Slater never used Plaintiff's name in these discussions and never accused any particular person of any particular action regarding the shortages.  (Elstrom Dep. 26:24–27:22).  Elstrom testified that at the time Slater asked that question of her, the $50.00 missing from the night before had not yet been found.  (Elstrom Dep. 27:7–9).  According to Elstrom, the $50.00 was found later that same day when Slater took the money to the bank and Elstrom simply concluded that Slater had miscounted.  (Elstrom Dep. 25:2–3).  Slater, on the other hand, never admitted to "miscounting" and said that as a matter of course, she counts and recounts her money to ensure accuracy.  (Slater Dep. 35:19–36:4).

Plaintiff argues that Slater's questions to Elstrom implied that Plaintiff stole the money, or at a minimum took the money and returned it later.  Interestingly, Elstrom specifically

testified that she did not feel like Slater was implying that Plaintiff was stealing. (Elstrom Dep. 37:8–18).

As outlined above, and repeated here for convenience, communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business. *Id.* at 141, 542 S.E.2d at 749 (citing *Conwell v. Spur Oil Co.,* 240 S.C. 170, 179, 125 S.E.2d 270, 275 (S.C. 1962)). Here, the testimony supports the argument that it was reasonable for Slater to ask Elstrom these questions, considering Elstrom previously worked as assistant store manager at the Sumter store and had trained Slater before she transferred to another store. A statement made by one assistant store manager to another assistant store manager, especially the one that trained her, is privileged. This statement is merely an employee asking for guidance from someone in the same position, and someone who performed the same job at the same store. Slater and Elstrom both have an interest in the cash handling at the Sumter store—Slater because she was the current assistant store manager and Elstrom, because she occasionally helped at the Sumter store, working the cash register. There is no evidence on the record that Slater exceeded this privilege or made such statement in bad faith. The statement may contain matter, which may be defamatory to Plaintiff; however, it is not actionable because it is privileged.[8] Based on the foregoing, summary judgment is appropriate as to the alleged slanderous statement made by Slater to Elstrom concerning the cash inconsistencies at the Sumter store.

ii.        *Belser's Statement to an Employee at Another Store*

---

[8] The court understands that Plaintiff is trying to hold Defendant liable for a statement made by an employee; however, it is unnecessary to analyze scope of employment because the court can resolve this issue under the privilege analysis.

Plaintiff alleges that Belser called an employee at a different store and complained about his cash drawer being tampered with and coming up short because of Plaintiff. (Lopez-Ortiz Dep. 30). This supposed other employee was not deposed and the only fact discerned about this employee was his name was Randy. *Id.* There is no evidence in the record to suggest the context in which the statements were allegedly made, when the statements were made, and there is no evidence as to what Belser exactly told this other employee, if anything. The absence of evidence on this matter fails to establish whether the statements made were defamatory, into what category of defamatory statement they could possibly fall, whether they were within the course and scope of Belser's employment or subject to a privilege. The Plaintiff has failed to carry its evidentiary burden concerning any alleged statement made by Belser to another employee at a different store.

If a party fails to properly support an assertion of fact or as required by Federal Rule of Civil Procedure Rule 56(c), the court may grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to summary judgment. Based on the foregoing, this Court holds that there is no *genuine* issue of material fact and that the Defendant is entitled to summary judgment as a matter of law in the defamation action regarding the alleged slanderous statement that Belser made to employees at a different store.

d. <u>Fourth Alleged Defamatory Statement</u>

*An unnamed "investigator" for Defendant "held conversations with others including several employees wherein he published the false allegations and appeared to implicate the Plaintiff in wrongdoing." (Am. Compl. ¶ 8).*

For purposes of this statement, the court acknowledges that the Defendant would be

27

liable for any defamatory statements made by Newkirk during the investigation into the Plaintiff. Newkirk was acting within the scope of his employment by conducting an investigation of cash handling and cash inconsistencies at the Defendant's store, the investigation was reasonably necessary to accomplish the purpose of his job as a loss prevention manager, and the investigation was in furtherance of the Defendant's business—to mitigate losses of the Defendant.

However, Defendant argues that any statement that the investigator, Newkirk, made would be privileged. As previously stated, communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business. *Id.* at 141, 542 S.E.2d at 749 (citing *Conwell v. Spur Oil Co.,* 240 S.C. 170, 178, 125 S.E.2d 270, 274–75 (1962)).

Newkirk's conversations to Bellamy about Plaintiff were privileged. Newkirk was an employee of the Defendant and made the alleged statement to another employee of Defendant. Newkirk's job as regional loss prevention manager included the investigation of cash handling and cash inconsistencies at Defendant's stores. An inquiry into the cash handling at the Sumter store fell under Newkirk's usual course of business, as did an inquiry into whether Plaintiff had taken Defendant's property. A statement made in connection with an employer's bona fide inquiry into possible employee misconduct is qualifiedly privileged. *Wright v. Sparrow,* 298 S.C. 469, 474, 381 S.E.2d 503, 507 (S.C. Ct. App. 1989).

Aside from Plaintiff's own testimony, Plaintiff has produced no evidence that Newkirk discussed his investigation and interview regarding Plaintiff with anyone other than Bellamy. Plaintiff's argument that the discussion with Bellamy and any other alleged discussion with other

28

employees were defamatory fails as a matter of law because of the intracorporate privilege.  Such comments, if any, made by Newkirk, were made during the course of a work-related investigation of Plaintiff's cash handling.  Plaintiff has offered no proof or argument that Newkirk abused the privilege or lost the privilege in any manner.

Based on the foregoing, this Court holds that there is no *genuine* issue of material fact and that the Defendant is entitled to summary judgment in the defamation action regarding any slanderous statements that Newkirk made during his investigation of Plaintiff.

> e.  *Fifth Alleged Defamatory Statement*

*Plaintiff alleged that Defendant's termination of him carried a "defamatory inference to the public and other employees, making it clearly understood and apparent that Plaintiff was terminated for stealing monies, incompetency as a store manager, and racially prejudice." (Am. Compl. ¶ 13).*

Plaintiff argues that his termination carried a defamatory inference to the public and other employees.  Pursuant to *Tyler v. Macks Stores*, referenced above, Plaintiff may only recover on such insinuation if it is false and malicious and the meaning plain.  Plaintiff claims that employees and people in the community knew of his termination, and these persons could infer that his character was in question.  The Plaintiff argues that this is actionable *per se* because it insinuates Plaintiff is unfit in his profession and Plaintiff committed a crime.  In further support of this contention, Plaintiff points out that loss prevention is only called when there is serious misconduct of an employee, and that the termination conveniently occurred the day that the regional director visited the store.

Defendant points out that at the time of termination, "Plaintiff admitted policy violations that warranted termination;" thus, "even if a defamatory insinuation could be gleaned from

Plaintiff's termination, a true statement cannot be a defamatory one." (ECF No. 52-1, p. 26). Defendant also argues that the termination was not carried out with malice. Specifically, Defendant explains that it performed an investigation, conducted an interview of Plaintiff, and received a hand-written admission—all resulting in Plaintiff's termination. Moreover, only one employee was working at the time of Plaintiff's termination and that the one employee did not know why Plaintiff was terminated. (Lopez-Ortiz Dep. p. 20:16–22). Moreover, the Plaintiff left the store on his own accord, without management or police escort and without speaking to anyone about his termination. (Fredrich Dep. 115:25).

The cases where South Carolina courts have found that a case should be submitted to a jury are distinguishable from this action. In *Mains v. K Mart Corp.,* 297 S.C. 142, 148, 375 S.E.2d 311, 314 (S.C. Ct. App. 1988), the Court of Appeals of South Carolina held that a combination of words and conduct from K mart employees (stopping and questioning a customer about a jacket he was wearing and escorting him to the back of the store) were sufficient to create a question of fact whether a published defamatory statement about a customer accused of shoplifting had established a defamatory statement. *Id.* The Supreme Court of South Carolina, in *Tyler v. Macks Stores,* found it was proper to submit to the jury a question of whether a customer had been defamed where he was required to take a polygraph test and immediately thereafter he and the store manager were discharged. *275 S.C. 456, 458,* 272 S.E.2d 633, 634. This action is also distinguishable from the case of *Moore v. Rural Health Servs., Inc.*, CIV.A.1:04 376 RBH, 2007 WL 666796 (D.S.C. Feb. 27, 2007) in which the District Court denied the defendant's motion for summary judgment on the issue of defamation where the plaintiff alleged that a Sheriff's Deputy was called to escort plaintiff out of the building and

30

while the plaintiff was trying to gather his belonging, a member of defendant's board of directors loudly stated in front of defendant's employees and patients that the plaintiff was stealing defendant's items and demanded that the Sheriff's Deputy search plaintiff's car. *Id.* at *4–5.[9]

From the facts presented, it is undisputed that the Plaintiff was not escorted out of the store by management or police, and that no words were spoken by employees or management except Lopez-Ortiz was told by management that Plaintiff was no longer with the company. Aside from bare allegations and the fact that he was terminated, Plaintiff has failed to provide evidence that the Defendant's actions on the day of his termination amounted to any defamatory conduct insinuating that he stole money, that he was incompetent as a store manager, or that he was prejudice. An employer terminating an employee for misconduct cannot by itself be held to be defamatory, something more is needed.

Plaintiff only offered his own testimony that he did not steal from the Defendant; therefore, there could be a genuine issue of material fact as to the falsity of any statement that insinuates or states that he stole from the Defendant.  Nevertheless, viewing all the evidence in a light most favorable to the Plaintiff, a reasonable trier of fact could not find that the Defendant acted maliciously in terminating the Plaintiff for violations of its written policy.  Common law actual malice means that the defendant acted with ill will toward the plaintiff or recklessly or wantonly, meaning with conscious indifference of the plaintiff's rights.  *Murray v. Holnam,* 344 S.C. 129, 142, 542 S.E.2d 743, 750 (S.C. Ct. App. 2001).  Such malice is not present here.

---

[9] Other courts have found that where a terminated employee was merely walked off the premises, even by a uniformed officer, the conduct was not defamatory as a matter of law.  *Bagby v. General Motors Corp.,* 976 F.2d 919 (5th Cir. 1992); *Davis v. Johns Crane, Inc.,* 261 Ill.App.3d 419, 199 Ill.Dec. 133, 633 N.E.2d 929, 938 (Ill. App. Ct. 1st Dist.1994); *Dubrovin v. Marshall Field's & Co. Employee's Credit Union,* 180 Ill.App.3d 992, 129 Ill.Dec. 750, 536 N.E.2d 800 (Ill. App. Ct. 1st Dist.1989); *Brown v. Gino Morena Enters.,* 44 F.Supp.2d 41 (D.D.C.1999); *Gay v. William Hill Manor, Inc. .,* 74 Md.App. 51, 536 A.2d 690, 693 (Md. Ct. Spec. App. 1988).

Accordingly, this Court holds that there is no *genuine* issue of material fact and that the Defendant is entitled to summary judgment as in the defamation action regarding the alleged slanderous conduct by Defendant for terminating Plaintiff.

## V.    CONCLUSION

As summarized from above, the following claims are granted summary judgment:

- The court grants Defendant summary judgment on the S.C. Code Ann. § 41-1-80 retaliation claim in favor of the Defendant.

- The court grants Defendant summary judgment as to the statement allegedly made by Belser to Slater and Lopez-Ortiz concerning the work schedule.

- As no statement was ever discovered, the court grants Defendant summary judgment regarding any statement that Slater may have made to customers.

- The court grants Defendant summary judgment regarding the alleged statement made by Belser to Brisbon during the phone call made after Plaintiff's termination.

- The court grants Defendant summary judgment regarding the alleged statement made to Brisbon while Belser worked the cash register.

- The court grants Defendant summary judgment regarding the statement allegedly made by Slater to Elstrom concerning the cash inconsistencies at the Sumter store.

- The court grants Defendant summary judgment regarding any statements that Belser made to employees at a different store.

- The court grants Defendant summary judgment regarding any statements that Newkirk made during his investigation of Plaintiff.

32

- The court grants Defendant summary judgment regarding the defamation action arising from Plaintiff's termination.

   As summarized from above, the following claims are denied summary judgment:

- The court denies Defendant summary judgment on the pre-termination statements made by Belser to other employees allegedly concerning his cash register coming up short.

- The court denies Defendant summary judgment on the alleged post-termination statement made by Belser to Lopez-Ortiz.

- The court denies Defendant summary judgment as to the statement allegedly made by Belser to Willis that "Gary is prejudiced against me."

   It is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

   IT IS SO ORDERED.

September 8, 2014                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                            United States District Judge